Strafford,
No. 4269.

LEO TREADWELL *v*. AMERICAN WOOLEN COMPANY & a.

Argued March 2, 1954.

Decided March 31, 1954.

*McCabe & Fisher* and *John D. McCarthy* (*Mr. McCarthy* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Louis E. Wyman* orally), for the defendants.

DUNCAN, J. Since the plaintiff has briefed and argued exceptions relating to two issues only, his remaining exceptions are deemed to have been waived. He relies first upon his exception to the denial of his motion for a new trial. At the hearing on the merits, in the course of testimony of an orthopedic surgeon called by the defendants, reference was made to x-rays taken at the witness' request by Boston radiologists on July 12, 1951. The witness testified that the x-ray films had been returned to the radiologists for "another review and that report was rendered the latter part of July." When he produced "those reports," counsel for the defendant offered "these two reports" in evidence, but upon objection they were excluded, and were never marked for identifica-

tion. Thereafter the witness was examined by plaintiff's counsel upon the "question of his qualifications as an x-ray expert," and it appeared that counsel had the reports in his hand while questioning the witness.

At the hearing upon his motion for a new trial on the ground of newly discovered evidence, the plaintiff called upon opposing counsel to produce from his file a letter from the radiologists dated July 30, 1951, and a report dated July 13, 1951. Counsel declined upon the ground that the plaintiff had had ample opportunity to obtain any documents at the trial and had elected not to do so. The plaintiff then offered to prove that a "report . . . dated July 30, 1951," (later corrected by the statement "excuse me, that letter was dated July 13, 1951"), stated that "the x-rays showed that the tips of the sixth, seventh and eighth spinous process were fractured . . . were never fully united . . . and that what they found in that x-ray would be the cause of the [plaintiff's] complaints." The offer of proof continued: "Then as a result of some correspondence [the radiologists] then on July 30, 1951 . . . sent a report . . . which then stated that the same x-rays were negative and they further requested in their letter of July 30, 1951, that the [insurer] be sure to destroy the reports made on July 13, 1951. Those reports were not destroyed and I say that my brother has them in his file."

In recommending denial of the plaintiff's motion to reopen, the master found and ruled that if the contents of the reports were as stated by the plaintiff, the information contained in them "would have been material," but that in view of the plaintiff's offer "there is considerable question as to how much weight would be given to any evidence contained in any of their reports." He further found that the plaintiff's attorney had reports of the radiologists in his hands during the course of the hearing and that "therefore, there can be no conclusion other than the fact that the plaintiff did have knowledge of the existence of the . . . reports and in the exercise of due diligence . . . would have had ample opportunity to learn of their contents."

The master further found that there was "no evidence that the defendant or his attorney at any time attempted to conceal or suppress any evidence," and that the plaintiff had ample opportunity before the case was submitted "to fully investigate and secure full knowledge of the . . . reports and correspondence."

Counsel for the defendants produced in this court, without objection, two original reports, dated July 13 and July 30 respectively,

neither of which refer to any fracture of the tips of the spinous processes. One states that the tips have never fully united to the remainder of the processes; the other refers to shadows below the tips which are "merely separate centers of ossification frequently seen on the tip of the spinal processes." Defendants' counsel asserts that there was no third report, that none can be shown to have existed, and that the files of counsel and of the company which were in counsel's possession "disclose no references in any memorandum to any third report."

The order denying the motion for new trial was fully warranted. At the hearing on the merits, plaintiff's counsel cross-examined at great length the expert who produced the two reports referred to in the record and used in the examination. After the trial concluded, the plaintiff was afforded several weeks in which to furnish additional expert testimony if he desired, before the case was submitted. He failed to establish that the alleged third report was discovered after the case was submitted, and if it was, that the failure to previously discover it did not result from lack of diligence. On the contrary the master found that diligence was lacking, and unexcused. These findings are supported by the record. We see no occasion to question the further finding that there was no evidence of any attempt by the defendants to conceal or suppress evidence.

The master properly expressed doubt concerning the weight which could be given to the reports, if the proof offered were received in evidence. Earlier x-rays, taken in October, 1950, were described by the plaintiff's own expert as containing "no evidence of recent or old fracture." X-rays taken by one of the defendants' experts on June 11, 1951, were described by him as showing "a minor compression of the superior surface . . . of dorsal seven . . . a well healed old fracture." He testified that his x-rays were "exactly the same" as those taken in 1950, and conceded that other doctors might "disagree" and "say there was no fracture." The third expert witness, to whom the reports of the x-rays of July 12 were made, testified that there was no evidence of fracture of the dorsal spine, and that the "tips of [three] spinous processes . . . seemed to be slightly separated."

If as the plaintiff claimed, there was in fact a report of July 13, 1951, which indicated fractures of three spinous processes and which was later reported to be erroneous, this evidence clearly would not require a finding that a different result would probably

be produced on retrial (*McGinley* v. *Railroad*, 79 N. H. 320), and would furnish doubtful support for such a finding if made. Since the master did not find the evidence to be "of such a character that it is at least probable that a different result will be reached upon another trial" (*Id.*, 321), the plaintiff's motion was properly denied. *Stanley* v. *Bowen Brothers*, 96 N. H. 467, 470.

The second issue presented by the plaintiff's argument is his contention that the master erred in making the following findings: "The master is unable to find that at the time of the plaintiff's termination of his employment with the defendant company, that he suffered any disability that could be attributed in whole or in part to the accident that occurred on January 4, 1948 . . . . The plaintiff would be suffering the same pain and disability today even had he not been involved in an accident." The plaintiff takes the position that findings in his favor were required because of testimony by the defendants' experts that because of his back condition and the fall he "might" have some predisposition toward further straining his back; that he "could have had" a sudden trauma on January 4, 1948; and that trauma on January 4, 1948, "could have aggravated any pre-existing conditions that he had."

It is obvious that such testimony did not require a finding for the plaintiff particularly in view of the positive opinions of the same witnesses that the plaintiff's fall was not the cause of his complaints in 1951, and that there was then nothing wrong with his back which could have come from the fall. The argument that the weight of the evidence "appears to substantiate" the plaintiff's position cannot be accepted. *Condilés* v. *Waumbec Mills*, 95 N. H. 127.

*Exceptions overruled.*

All concurred.